## FREEMAN v. UNITED STATES.
### Nos. 11190, 11191.

Circuit Court of Appeals, Ninth Circuit.
Dec. 30, 1946.

Rehearing Denied Jan. 30, 1947.

---

893

Gerald D. Hile, of Seattle, Wash., and Samuel Edelstein and O. C. Moore, both of Spokane, Wash., for appellant.

Harvey Erickson, U. S. Atty., and Frank R. Freeman, Asst. U. S. Atty., both of Spokane, Wash., for appellee.

Before GARRECHT, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

These are appeals from convictions upon an indictment and an information charging appellant, respectively, with conspiracy to violate the Second War Powers Act of 1942[1] and Revised Ration Order No. 16[2], and with the substantive offense of violating said Act and Order. The indictment and information were consolidated for trial and the appeals are consolidated here.

Appellant, a public accountant in Spokane, Washington, conceived the idea, in the summer of 1944, of establishing a restaurant in Spokane. He, Rose (a co-defendant in the lower court), and one Huse, entered into negotiations with the result that Rose and Huse formed a partnership and employed appellant as paid managing director, and accountant. Appellant loaned $10,000 to Huse for the venture, and when this money had been paid back appellant was to receive a one-sixth interest in the business. The money was not repaid. Before the business was well launched, Huse dropped out.

As managing director appellant negotiated for a lease on the premises to be occupied by the restaurant, signed checks, and had authority (which he exercised) to determine the business policy of the venture.

One Michael, a restaurant man and a former employee of the Office of Price Administration, was employed to run the restaurant and to take care of rationing questions. Appellant stated he was not informed as to rationing requirements. Appellant did some ordering for the restaurant and pledged his own credit for payment of some of the supplies. There was evidence that the initial application for ration points was prepared in appellant's office.

The restaurant opened in December 1944 and lost money from the start. Shortly after the opening appellant asked one Jacobs, a co-defendant in the lower court, to assist by suggesting improvements in the operation of the restaurant with the possibility being held out that Jacobs might later acquire an interest in the business.

The charges contained in both the indictment and the information are based on two transactions:

A. Jacobs, a former camp supervisor for a railroad, testified that appellant told him the restaurant was short of meat ration points and that appellant asked about buying some meat. Jacobs told appellant that he (Jacobs) could borrow some meat points from an account in North Dakota, but that the restaurant would have to pay these points back.[3] Appellant then gave Jacobs $500 to use in buying meat and Jacobs purchased four barrels of meat in Minneapolis and later purchased another four barrels

---

[1] 50 U.S.C.A.Appendix, § 633.
[2] Fed.Register 6731.

[3] Appellant denied there had been any conversation about points.

894

there, and gave the seller points belonging to a creamery company in North Dakota. The 8 barrels of meat were shipped to the restaurant in February, 1945.

Appellant notified Michael that the meat was arriving from Minneapolis but appellant did not direct Michael then, or at any time, to surrender ration points to the seller for the meat, and none were surrendered by the restaurant for said 8 barrels.

B. Jacobs also told appellant that he (Jacobs) could purchase some meat in Missoula, Montana, and that no meat ration points were required by the seller for this meat. Jacobs testified that appellant told him "Buy the meat; it is a good buy."

Jacobs paid cash but surrendered no meat ration points for 40 quarters of meat, which was then shipped from Missoula in March, 1945, on a bill of lading describing it as "poultry." Appellant told Jacobs to have these 40 quarters shipped to "S. S. Freeman, Spokane." After the meat arrived and was put in cold storage in appellant's name, appellant asked Michael "how the beef was," and Michael replied that it was "beautiful beef." Nothing was ever said about ration points for the meat. Michael testified that no points were paid for the 40 quarters because "There couldn't have been. We didn't have enough points to pay for anything like that." The meat was later withdrawn from cold storage in small quantities and used in the restaurant. No points were surrendered for the meat withdrawn.

The indictment charges appellant, Jacobs and Rose with conspiracy by offering, agreeing and assisting in the transfer of meat, including said 40 quarters of beef, a rationed commodity within Revised Ration Order No. 16, without the exchange of ration evidences, and conspiracy to transfer and possess meat without the surrender or exchange of ration evidences.

The information charges appellant and Jacobs with wilfully and unlawfully acquiring and possessing 40 quarters of beef without surrendering the necessary ration points to the seller or transferor. Other counts charge that appellant wilfully and unlawfully transferred meat to Rose without receiving the required ration points; that appellant and Rose wilfully and unlawfully acquired four barrels of meat without surrendering to the seller the required points, all in violation of Revised Ration Order No. 16, and that appellant sold beef to Rose without giving the written statement required by a specific Maximum Price Regulation.

Jacobs pleaded guilty to all charges before trial. Rose was convicted and did not appeal. Appellant was convicted on the indictment and all counts of the information pertaining to him.

Appellant's principal contentions are:

1. That the indictment and information are void; and

2. That the court erred in giving numerous instructions and in failing to give other instructions for which no request was made.

The sufficiency of the evidence to support the convictions is also challenged in other assignments of error filed more than five months after the notice of appeal was filed.

The sufficiency of the information is challenged because of its use of the disjunctive in the phrase "without surrendering (the required ration points) to the seller *or* transferor" of the meat. This contention is without merit. Section 27.1 of Revised Ration Order No. 16 defines "transfer" as meaning to sell, as well as to transfer in other ways, and, hence, "seller" and "transferor" are synonymous under the regulation. Hence, the allegation is not, in fact, in the disjunctive.

Appellant's claim that the indictment and information are void because of indefiniteness has no merit. True, the specific section of the regulation alleged to have been violated is not set out; however, reference is made to Revised Ration Order No. 16 and to section 20.1 of that order.

The offenses of which appellant is accused are prohibited by Revised Ration Order No. 16, and had appellant felt unable to defend because of lack of information as to which specific section of the regulation he violated, he should have moved for a bill of particulars.

United States v. Crummer, 10 Cir., 151 F.2d 958, certiorari denied, 66 S.Ct. 704,

cited by appellant, merely states the familiar and settled rule that "Where the statute is in general terms and does not set out expressly and with certainty all of the elements necessary to constitute the offense, the indictment must descend to particulars and charge every constituent ingredient of which the crime is composed." 151 F.2d at page 962. Such is not the situation here. The Ration Order does set out with sufficient certainty all of the necessary elements of the offense.

■ Further attack is made on the indictment on the ground that while it charges appellants wilfully conspired to commit the acts complained of, it does not charge "that he wilfully conspired to wilfully commit" the acts complained of.

We think the argument is over-refined. The indictment charges that appellant "knowingly, wilfully, unlawfully and feloniously" conspired to commit certain "acts, offenses and crimes against the United States." It is difficult, if not impossible, to conceive of a case where a conspirator could wilfully and feloniously confederate with another to commit acts *without* the evil motive to do that which the statute condemns. The indictment apprised appellant of the crime charged and with such reasonable certainty as to enable him to defend and to be able to plead the judgment as a bar to future prosecution for the same offense.[4]

■ The indictment is declared to be void on two other grounds:

(1) that it fails to state where the conspiracy was formed, and

(2) that it charges a conspiracy to commit a conspiracy.

As to the first, it is clear that a conspiracy prosecution may be maintained in any district of the United States where the illegal agreement is entered into, or where any of the alleged overt acts in furtherance of that illegal agreement take place.[5] Here, one of the overt acts alleged is that appellant received and put in cold storage, 40 quarters of beef in Spokane, Washington. Hence, it appears on the face of the indictment that the District Court had jurisdiction and that the venue was properly laid.[6]

■ Finally appellant contends that section 20.1 of Revised Ration Order No. 16 prohibits one from *agreeing* to do any act in violation of the order, and that, consequently, since the substantive offense involves an agreement, the indictment in effect charges a conspiracy to commit a conspiracy.

The indictment alleges a conspiracy which involves more than merely the necessary parties (i.e., buyer and seller) to the illegal transaction, namely, the sale or other transfer of meat without ration points, which brings this case within the principles set out in Old Monastery Co. v. United States, 4 Cir., 147 F.2d 905, 907-908, certiorari denied 326 U.S. 734, 66 S.Ct. 44; Blumenthal, et al., v. United States, 9 Cir., 158 F.2d 883.

■ Concerning the instructions of the court, appellant complains particularly of the failure to define "wilful" and thinks such definition vitally necessary because the Second War Powers Act and the Emergency Price Control Act[7] on which the information and indictment were based require, in order to constitute a crime, wilful violations or wilful failures to perform required acts.

No such instructions were requested by appellant at the trial and while we will undoubtedly notice plain error on appeal, even though no challenge was made in the lower court, such error must have prejudiced in some substantial manner appellant's right to a fair trial.

Viewing the instructions given as a whole we can find no such prejudice to appellant in the failure to define the term "wilful" by name. Appellant urges here that the term implies not only a knowledge of the prohibited action but "a determination with a bad intent to do it or omit doing it; an

---

4 United States v. Crummer, 10 Cir., 151 F.2d 958, 962, and cases there cited.

5 United States v. Socony Vacuum Oil Co., 310 U.S. 150, 252, 60 S.Ct. 811, 84 L.Ed. 1129; Hickok v. Hunter, 10 Cir., 150 F.2d 635, 636, certiorari denied 326 U.S. 765, 66 S.Ct. 137.

6 Cf. Brown v. Elliott, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; Hyde v. United States, 225 U.S. 347, 367, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614.

7 50 U.S.C.A.Appendix, § 902.

evil motive to accomplish that which the statute condemns; a purpose to do the thing prohibited." We have no quarrel with this definition but the trial court instructed the jury that appellant's intent could be presumed if it was shown that unlawful acts were committed and "it is shown that such acts were a part of a plan and were knowingly and intentionally committed for the purpose of carrying forward a scheme to violate the law as charged."

We fail to see any material distinction between appellant's definition and the court's instructions covering the factors necessary to show the required intent.

■ The instructions are also challenged because, as part of a lengthy charge on reasonable doubt, the court said " 'Proof beyond all reasonable doubt' means * * * that any doubt which will justify an acquittal must be a reasonable doubt, must be a doubt based on reason."

But a sentence wrenched from the context rarely does justice to the whole thought. Considered in its entirety, we find no error in the instruction. It appears to be a standard phrasing of the subject, in terms frequently employed by trial courts without challenge in numerous cases.

■ Numerous additional alleged errors are urged, including the four late supplemental assignments of error referred to previously, wherein appellant argues that the evidence shows he thought the 40 quarters of beef were point free, and hence that he could not be guilty of a statute and regulation requiring wilful violations.

But the question of appellant's good faith and whether he knowingly committed unlawful acts for the purpose of carrying forward a scheme to violate the law, was, as we have said, properly submitted to the jury under proper instructions. It was the main contention of appellant at the trial that he had nothing to do with rationing questions and knew nothing of them. The jury's verdict, under proper instructions, has resolved this argument against appellant.

■ ■ In addition to those mentioned, we have given attention to all assignments of error made by appellant and reach the conclusion that from a consideration of the entire record, no substantial rights of appellant have been violated.[8]

The judgments are affirmed.