**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

ZOUBIDA AMIRAT TIROUDA, aka;
Zoubida Amirit Tirouda,
              *Defendant-Appellant.*

No. 03-50433

D.C. No.
CR-00-00100-IEG

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

SALAH TIROUDA,
              *Defendant-Appellant.*

No. 03-50434

D.C. No.
CR-00-00100-IEG

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.

ZINEDDINE TIROUDA,
              *Defendant-Appellant.*

No. 03-50446

D.C. No.
CR-00-00100-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
October 7, 2004—Pasadena, California

Filed January 10, 2005

281

Before: J. Clifford Wallace, Thomas G. Nelson, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw

**COUNSEL**

Mark F. Fleming and Lori B. Schoenberg, Federal Defenders of San Diego, Inc., San Diego, California, for appellant Zineddine Tirouda.

Robert A. Garcia, San Diego, California, for appellant Zoubida Tirouda.

Michael J. McCabe, San Diego, California, for appellant Salah Tirouda.

Carol C. Lam, United States Attorney; Roger W. Haines, Jr., Assistant U.S. Attorney; and Michael G. Wheat, Assistant U.S. Attorney, San Diego, California, for the appellee.

**OPINION**

WARDLAW, Circuit Judge:

Zineddine, Salah, and Zoubida Tirouda appeal from judgments convicting them of passport and immigrant fraud offenses in violation of 18 U.S.C. §§ 371, 1542, and 1546. We have jurisdiction pursuant to 28 U.S.C. § 1291. We consider whether the district court violated the Tiroudas' due process rights by instructing the jury to consider an alleged accomplice's testimony, which favored the Tiroudas, with greater caution than that of other witnesses. We also consider whether the district court erred in failing to define "accomplice" in that instruction. We join the Fifth and Seventh Circuits in holding that there is no error in giving an accomplice

witness instruction when the accomplice's testimony favors the defendant. Nor did the failure to define "accomplice" in the accomplice witness instruction amount to plain error because, taken as a whole, the instructions were clear and any lack of clarity did not prejudice the Tiroudas.

## BACKGROUND

In 1993, Zineddine Tirouda came to the United States as a visitor for pleasure, using a B-2 visa he obtained at the United States Embassy in Paris. Later that year, he filed an application for political asylum in which he claimed that he was an Algerian citizen, born in Algeria.

In 1995, Zineddine moved from New York to California to take a job with J. Mueller, Inc. In an effort to regularize Zineddine's immigration status so that he could work at the company legally, J. Mueller retained the services of several immigration attorneys. At this time, Zineddine completed United States Immigration Form I-9, in which he stated that he was an alien with temporary work authorization. J. Mueller's attorneys also applied for an H1B visa on Zineddine's behalf and sought to obtain a labor certification to adjust Zineddine's status to that of a lawful permanent resident. In the interim, Zineddine received temporary work authorization while his applications were being processed.

Eventually, Zineddine's H1B visa was approved. To retrieve the visa, however, Zineddine was required to return to Algeria. Since he refused to do so, J. Mueller contacted attorney Peter Larrabee to determine if Zineddine's asylum application was viable. Larrabee told J. Mueller that he was one-hundred percent certain that Zineddine's asylum claim was not viable.

In early 1999, shortly before his asylum hearing was to be held and his H1B visa was to expire, Zineddine retained an attorney and claimed for the first time in an official United

States document that he was a United States citizen born in Meridian, Mississippi. Zineddine filed a lawsuit against the State of Mississippi to compel it to issue a delayed birth certificate. In his pleadings, he claimed that he was born in Meridian, Mississippi, on May 1, 1964, with a midwife in attendance. To augment his claim of birth in Mississippi, Zineddine flew his parents, Amar and Tata Tirouda, from Algeria to Mississippi to testify on his behalf. Before they left Algeria, Amar and Tata visited the United States Embassy in Algiers to apply for visas. On their visa applications, both Amar and Tata stated that it was to be their first visit to the United States. United States records indicate that this was indeed their first visit to the United States.

On August 17, 1999, in Meridian, Mississippi, Zineddine, Amar, and Tata Tirouda testified under oath in a chancery court that Zineddine was born in Mississippi in 1964 when Amar and Tata were in the United States looking for work. After the hearing, the Mississippi court ordered the issuance of a delayed Mississippi birth certificate for Zineddine.

After receiving the delayed Mississippi birth certificate, Zineddine completed a United States passport application. In his application, Zineddine used the birth certificate to support his claim that he was born in Mississippi. On September 3, 1999, Zineddine's parents filed separate affidavits in support of Zineddine's passport application.

After the government conducted an investigation into Zineddine's past, Zineddine was charged with conspiracy to possess immigration documents obtained by fraud, in violation of 18 U.S.C. §§ 371 and 1546, and making false statements in application for a United States passport, in violation of 18 U.S.C. § 1542. Zineddine's parents, Amar and Tata Tirouda, were also charged with making false statements in documents filed in support of an application for a United States passport, in violation of 18 U.S.C. § 1542. In a related matter, Zineddine's wife, Zoubida Tirouda, and his brother,

Salah Tirouda, were charged with conspiracy to possess immigration documents obtained by fraud, in violation of 18 U.S.C. §§ 371 and 1546, and possession of immigration documents obtained by fraud, in violation of 18 U.S.C. § 1546.

Zineddine, Salah, and Zoubida Tirouda were tried together. At their joint trial, Tata Tirouda testified on Zineddine's behalf against her counsel's advice because she also was indicted for passport fraud. Tata testified that in 1964 she gave birth to Zineddine in Meridian, Mississippi. She provided great detail about the circumstances surrounding her trip to the United States and her time in Meridian both before and after Zineddine's birth.

At the jury instruction conference before closing arguments, the government requested that the district court give an accomplice witness instruction for Tata Tirouda. At that time, Ninth Circuit Pattern Jury Instruction No. 4.11 read:

> You have heard testimony from [*witness*] who [*admitted being*] [*was alleged to be*] an accomplice to the crime charged. An accomplice is one who voluntarily and intentionally joins with another person in committing a crime. You should consider such testimony with greater caution than that of other witnesses.

Ninth Circuit Pattern Jury Instruction 4.11. Over defense objections, the district court agreed to the instruction. At the request of the defense, however, the district court modified Ninth Circuit Pattern Instruction No. 4.11 to reflect that Tata was indicted in the case, had pleaded not guilty, and was not on trial with the other defendants. No additional modifications or additions were requested by the defense. The instruction given was as follows:

> You have heard testimony from Tata Tirouda, who was also indicted in this case. As I told you before,

she has pled not guilty and she is not on trial here now. However, because the government alleges that she is an accomplice in the crimes charged, you should consider such testimony with greater caution than that of other witnesses.

After the jury returned a verdict convicting the Tiroudas on all counts, Zineddine filed a motion for a new trial, which alleged, inter alia, that the jury instruction regarding Tata's testimony was given in error. The district court denied the motion for a new trial, and this appeal ensued.

## DISCUSSION

### I. Due Process

The district court did not violate the Tiroudas' due process rights by instructing the jury to consider Tata Tirouda's testimony with greater caution than that of other witnesses. We reject the Tiroudas' claim that an accomplice witness instruction is permitted only when an accomplice testifies for the government, and that by giving such an instruction, the district court violated their right to due process by precluding them from presenting their theory of defense.[1]

[1] Although this question is one of first impression in our circuit, it is well-settled law that district courts have the discretion to give an accomplice witness instruction in cases where an accomplice testifies for the prosecution. The policy behind this rule—to allow district courts to alert juries of the possibility of perjured testimony—applies equally to cases where an accomplice testifies on behalf of the defendant. An accomplice's testimony may be suspect, regardless of whether he testifies for the prosecution or the defense. As recognized by the Fifth Circuit, "[w]hen an accomplice testifies for the

---

[1]We review de novo a claim that a jury instruction violates due process. *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994).

prosecution[,] he may have an interest in prevaricating in favor of the prosecution to obtain favors or even immunity. On the other hand, when one accomplice testifies for another, there is always the chance that each will try to swear the other out of the charge." *United States v. Nolte*, 440 F.2d 1124, 1126-27 (5th Cir. 1971) (citation and quotations omitted). Therefore, the policy behind accomplice witness instructions supports allowing the district courts to exercise their discretion in giving such an instruction, whether an accomplice testifies for the prosecution or, as here, for the defense.

**[2]** Moreover, both the Fifth and Seventh Circuits have ruled that there is no error in giving an accomplice witness instruction when the accomplice's testimony favors the defendant. *See United States v. Urdiales*, 523 F.2d 1245, 1248 (5th Cir. 1975); *United States v. Simmons*, 503 F.2d 831, 837 (5th Cir. 1974); *Nolte*, 440 F.2d at 1126-27; *United States v. Bolin*, 35 F.3d 306, 308 (7th Cir. 1994). Indeed, the Supreme Court has indicated that a district court does not err in giving an accomplice witness instruction favoring the prosecution. *See Cool v. United States*, 409 U.S. 100, 103 (1972) (per curiam) (citing the rationale for such an instruction given in *Nolte*, 440 F.2d 1124, as posing "[n]o constitutional problem").

**[3]** We hold that, although an accomplice witness instruction must be properly formulated along the lines of former Ninth Circuit Pattern Instruction No. 4.11, there is no error in giving such an instruction when the accomplice's testimony favors the defendant. We agree with the Fifth Circuit that such an instruction does not raise constitutional concerns and is within the district court's broad discretion in the conduct of the trial. *See Nolte*, 440 F.2d at 1126-27.

**[4]** Unlike the accomplice witness instruction disapproved in *Cool*, the instruction here did not predicate the jury's acceptance of Tata Tirouda's testimony on finding it true beyond a reasonable doubt. *See Cool*, 409 U.S. at 101-02. Rather, it addressed only the weight to be accorded the evi-

dence. Therefore, the district court did not err in instructing the jury to consider Tata Tirouda's testimony with greater caution than that of other witnesses, and no due process rights were violated.

## II.   Accomplice Definition

We also reject the Tiroudas' contention that the instruction was misleading because it did not define "accomplice." When a defendant objects to an instruction at trial, we review the district court's formulation of the instructions for an abuse of discretion. *Warren*, 25 F.3d at 898. If a party does not properly object at trial, however, the plain error doctrine applies. *United States v. Williams*, 990 F.2d 507, 511 (9th Cir. 1993).

After objecting to the district court's decision to give the accomplice witness instruction, defense counsel did not object to the court's failure to define "accomplice." While defense counsel asked the district court judge to add language to the instruction to reflect that Tata Tirouda was indicted in the case, had pleaded not guilty, and was not on trial with the other defendants, defense counsel did not request that the instruction define "accomplice" and did not object to the omission of the definition. To have preserved their right to appellate review under the abuse of discretion standard, appellants must have "objected before the jury retired, stating *distinctly* the matter to which [they] objected and the *grounds* of the objection." *Williams*, 990 F.2d at 511 (emphasis in original). Offering additional language alone is not enough; "the district court must be fully aware of the objecting party's position." *Id*. Because appellants' counsel did not distinctly object to the district court's failure to define "accomplice," we review for plain error. *See United States v. Anderson*, 201 F.3d 1145, 1149 (9th Cir. 2000) (holding that plain error review was appropriate because the defense did not properly object at trial to the omission of an instruction).

Under the plain error doctrine, we correct an error where an objection was not interposed at trial only where the error (1)

is plain, (2) affects substantial rights, and (3) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001). To allow us to conclude that omission of the definition of "accomplice" affected the Tiroudas' substantial rights, the error "must have prejudiced in some substantial manner [their] right to a fair trial." *Freeman v. United States*, 158 F.2d 891, 895 (9th Cir. 1947); *see also United States v. Olano*, 507 U.S. 725, 734 (1993).

**[5]** Whether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience. No prejudice results from a district court's failure to define a concept "within the comprehension of the average juror." *United States v. Dixon*, 201 F.3d 1223, 1231 (9th Cir. 2000) (holding that the district court did not err in failing to define "commercial advantage" and "private financial gain" because they are terms within the comprehension of the average juror); *see also United States v. Aguilar*, 80 F.3d 329, 331 (9th Cir. 1996) (en banc) ("[A] district court is not necessarily required to define knowledge for the reason that it is a common word which an average juror can understand and apply without further instruction."); *United States v. Moore*, 921 F.2d 207, 210 (9th Cir. 1990) (holding that the district court did not err in failing to define "violence" because it is a concept within the ordinary experience of the jury); *Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1987) ("[C]riminal recklessness under Alaska law relates essentially to the common-sense definition of recklessness, which the average juror could understand and apply without an instruction.").

**[6]** The concept of an "accomplice" arguably is within the jury's ordinary experience. But even if the concept of an accomplice were outside the comprehension of the average juror, the instruction here was not misleading. Although the instruction did not include a separate sentence explicitly defining "accomplice," it stated that Tata Tirouda "was also

indicted in this case," thereby providing an abridged version of the definition of "accomplice." *See Guam v. Dela Rosa*, 644 F.2d 1257, 1260-61 (9th Cir. 1981) (per curiam) (defining an accomplice as "one who could have been indicted for the same offense either as an accessory or principal"). In the context of the instructions as a whole, the accomplice witness instruction was not confusing. And, even if we were to conclude that the instruction was confusing, any error would still not be plain because it did not prejudice the Tiroudas. *See Freeman*, 158 F.2d at 895 (holding that there was no prejudice to appellant due to the failure to define the term "wilful"); *Moore*, 921 F.2d at 210 (stating that appellant "suffered no actual prejudice"); *Walker*, 850 F.2d at 475 ("The omission of an instruction is 'less likely to be prejudicial than a misstatement of the law.' ") (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Therefore, we hold that the district court's failure to define "accomplice" in the accomplice witness instruction did not amount to plain error.

## CONCLUSION

Accordingly, with respect to the arguments considered in this opinion, we affirm the judgments of conviction.[2]

**AFFIRMED.**

---

[2]Please see the accompanying Memorandum Disposition for a discussion of our holdings regarding the Tiroudas' remaining claims of error.