# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JULIO CESAR RUIZ,
         *Defendant-Appellant.*

No. 04-10308

D.C. No.
CR-03-05111-
2-AWI

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

ANGEL ELIAZAR NORIEGA-
VALENZUELA,
         *Defendant-Appellant.*

No. 04-10311

D.C. No.
CR-03-05111-AWI

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted
October 19, 2005—San Francisco, California

Filed August 30, 2006

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Rawlinson

10479

**COUNSEL**

Melody M. Walcott, Fresno, California, for appellant Julio Cesar Ruiz.

John F. Garland, Fresno, California, for appellant Angel Eliazar Noriega-Valenzuela.

Kathleen Servatius (briefed) and Kevin Rooney (argued), Fresno, California, for appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

Appellants Angel Eliazar Noriega-Valenzuela (Noriega) and Julio Cesar Ruiz (Ruiz) were convicted by a jury of conspiracy to manufacture and distribute methamphetamine (meth), aiding and abetting, and possession of firearms in furtherance of drug trafficking crimes. The judge sentenced Noriega to a term of 295 months' imprisonment and Ruiz to a term of 352 months' imprisonment.

On appeal, Noriega argues the following: 1. that the evidence was insufficient to prove possession of firearms in fur-

therance of a drug trafficking crime; 2. that the district court erred by accepting the drug quantity recommendation in the presentence investigation report, which was higher than that found by the jury; and 3. that the sentence imposed by the district court for Count 1 violated his Sixth Amendment rights.

In addition to the issues raised by Noriega, Ruiz argues the following: 1. that the district court erred by giving a preliminary jury instruction on reasonable doubt; and 2. that the district court erred by assessing a two-level increase for obstruction of justice.

Because we conclude that insufficient evidence was introduced at trial to support the firearms possession convictions, we reverse Appellants' convictions on those counts and vacate their sentences.[1] We otherwise affirm.

## I. BACKGROUND

This case originated when agents of the Stanislaus County Drug Enforcement Agency (SDEA) began surveillance of a red truck containing two 55-gallon drums of methanol. Methanol is commonly used by meth manufacturers to extract pseudoephedrine from tablets. At trial, a narcotics officer described it as the "meth cook's choice."

Agents followed the red truck to a residence on Atlantic Drive in Modesto, California, owned by Jose Acosta (Acosta). After a white pickup truck with a camper shell arrived, agents observed Ruiz, the driver of the white pickup, remove three

---

[1]Accordingly, we do not address the sentencing issues raised on appeal. We only note that reversal of the firearms convictions causes the sentencing package to become "unbundled." On remand, the district court must "put together a new package reflecting its considered judgment as to the punishment the defendant[s] deserve[ ] for the crimes of which [they are] still convicted." *United States v. Bennett*, 363 F.3d 947, 955 (9th Cir. 2004) (citations omitted).

empty 5-gallon plastic containers from the back of the white pickup. Ruiz departed and returned about an hour later.

Upon his return, agents observed Ruiz remove more empty 5-gallon plastic containers from the white pickup and replace them with seven 5-gallon containers that appeared to be filled.[2] Upon his second departure, agents followed Ruiz to 1045 Brigadoon, the residence of Enrique Diaz (Diaz). SDEA Agent Steve Hoek "walked a canal" behind Diaz's house and smelled alcohol. As a result, agents decided to seek a search warrant for the house.

As officers subsequently approached the house from the front and rear, Agent Hoek saw Ruiz run from behind the garage, attempt to scale the back fence, dart across the lawn and scale a neighbor's fence. Agent Hoek also saw three more men exit the property.

Ruiz was located hiding under a truck on a neighboring property. Noriega was found at a nearby convenience store. Noriega was sweating, appeared nervous, and had twigs, sticks and dirt on his clothing. Agents also observed a white crystalline substance on Noriega's body and clothing. The substance tested positive for pseudoephedrine.

Agents seized a key from Noriega that fit the garage door of the Brigadoon residence, where the meth was discovered. Noriega and Ruiz also possessed keys that opened both the interior and exterior garage doors of the Brigadoon property. Officer Manuel Corona interviewed the Defendants. Noriega told Officer Corona that both he and Ruiz had been at the Brigadoon residence and that he was in the garage watching television. Officer Corona noticed scratches on Noriega's arm and inquired about the injuries. Noriega responded that he had

---

[2]Acosta testified that he obtained the methanol for delivery to Ruiz. Ruiz informed Acosta that Ruiz was going to use the methanol to produce meth.

been pruning trees in the front yard earlier that day. Officer Corona walked to the area in the yard described by Noriega, but could not find any freshly cut tree limbs.

Back at the Brigadoon residence, Agent Bill Pooley discovered one security camera underneath the carport area of the garage and another near the front door of the house. In the loft area, he saw two firearms on a couch with no cushions.

Officer Scott Myers also saw two firearms on a couch in the loft area. He found two more firearms in the main part of the house. Several other firearms were located, including in the stairwell of the house and underneath a sofa cushion in the garage.

Found inside the residence were the following items commonly used to produce meth: acetone; Coleman fuel; Red Devil lye; a heating mantle; a 54-liter cooking vessel; gallon-sized Ziploc bags; a propane tank; and bags of iodine crystals. In addition, a shoe box containing meth was discovered.

After transporting the detainees from the Brigadoon residence to the county jail, Deputy Sheriff Tony Hinostroza directed Ruiz and another Defendant out of the patrol car. As Deputy Hinostroza was checking the backseat for contraband, he heard someone running in the direction of the security gate. Deputy Hinostroza looked up and observed Ruiz run toward the security gate and scale the fence. Ruiz was apprehended approximately one hour later.

The government filed an Indictment against various defendants, including Noriega and Ruiz. Noriega and Ruiz were charged with: Conspiracy to Manufacture and Distribute Methamphetamine, Aiding and Abetting in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (Count 1); Possession of Firearms in Furtherance of Drug Trafficking Crimes in violation of 18 U.S.C. § 924(c)(1)(A)(I) (Count 2); and Escape from the Custody of the Attorney Gen-

eral in violation of 18 U.S.C. § 751(a) (Count 3[3] [*sic*] — against Ruiz only).

   Noriega and Ruiz went to trial. During voir dire, the district court gave preliminary jury instructions. When discussing "reasonable doubt," the district court gave the following instruction to the jury pool:

> [W]hen I say "beyond a reasonable doubt," the Government does not have the burden to prove something beyond all possible doubt. Everything in life is subject to some doubt, either real or imaginary.
>
> When you hear all the evidence and you're back deliberating, and you have some doubt in your mind as to whether or not the Government has proven its case, you have to think what is it - what is this doubt that I have in my mind, and then you have to decide whether it is reasonable or not. If it is not reasonable, that is, it can be explained away satisfactorily to you, then the fact that the Government hasn't proven everything, for example, and I'm not saying it would apply in this case at all, but we all hear about DNA. DNA is the hot thing in civil and criminal law cases. And in this case let's say, for example, the Government doesn't present DNA evidence, whatever that is. You can't say, "Well, you know, the Government is — I'm satisfied the Government has proven its case about witnesses. It brought evidence, it brought in documents, et cetera, but they never had any DNA. Isn't that important?" Well, if it isn't important to the case for your determination, then it's not a reasonable doubt. The fact that the Government doesn't present DNA evidence in every case doesn't

---

[3]The Indictment listed two counts as Count 3. The other Count 3 did not involve Noriega or Ruiz.

necessarily mean that there is any reasonable doubt as to the guilt or innocence.

After the prosecution rested, both Noriega and Ruiz made Rule 29 motions for judgments of acquittal on all counts. The district court denied both motions as to Counts 1 and 2 and granted Ruiz's motion as to Count 3.

After the parties rested, the district court instructed the jury. The "reasonable doubt" instruction was taken from the Ninth Circuit Manual of Model Jury Instructions § 3.5 providing:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.
>
> A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.
>
> If, after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

The district court also gave the following *Pinkerton* instruction:

> Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in the furtherance of the conspiracy.

If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed the crime. Before you may consider the statements or acts of a coconspirator, you must first determine whether the acts or statements were made during the existence of and in furtherance of an unlawful scheme, and whether any offense was one which could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Therefore, you may find the defendant guilty of possessing a firearm in furtherance of a drug conspiracy as charged in Count 1 of the Indictment if the government has proved each of the following elements beyond a reasonable doubt:

1. a person committed the crime of conspiring to make methamphetamine as alleged in Count 1 of the Indictment;

2. the person was a member of the conspiracy charged in Count 1 of the Indictment;

3. the person committed the crime of possessing a firearm in "furtherance of a drug trafficking crime in furtherance of the conspiracy;

4. the defendant was a member of the same conspiracy at the time of the offense charged in Count 1 was committed; and

5. the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

Noriega and Ruiz were convicted of conspiracy to manufacture and distribute meth and possession of firearms in fur-

therance of drug crimes. The jury found that the quantity of meth involved was "500 grams or more of a mixture containing methamphetamine and/or 50 grams of methamphetamine."

Noriega and Ruiz each requested role adjustment decreases, which were denied by the district court. The Presentence Investigation Report (PSR) recommended a base offense level of 38 for each defendant, predicated upon possession of 8.4 kilograms of actual meth. The report also recommended an obstruction of justice enhancement for Ruiz, based on his escape prior to entering the jail. The district court adopted the recommendations of the PSR and sentenced Noriega and Ruiz to 295 months' imprisonment and 352 months' imprisonment, respectively. These appeals followed.

## II.  DISCUSSION

### A.  *Preliminary Jury Instruction on Reasonable Doubt*

Ruiz contends that the reasonable doubt preliminary instruction given during voir dire and the one given at the end of the case "present conflicting premises for the jury." Ruiz adds that the DNA example confused the prospective jurors.

#### 1.  Standard of Review

We review the district court's formulation of jury instruction for plain error where a party does not object at trial. *United States v. Tirouda*, 394 F.3d 683, 688 (9th Cir. 2005). Under plain error review, we will correct an error "only where the error (1) is plain, (2) affects substantial rights, and (3) seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

#### 2.  Discussion

[1] "The Constitution does not require that any particular form of words be used in advising the jury of the govern-

ment's burden of proof." *United States v. Artero*, 121 F.3d 1256, 1258 (9th Cir. 1997) (citation and alteration omitted).

After the evidence was presented, the district court gave the model jury instruction on reasonable doubt. We have held that giving a similar instruction did not constitute plain error. *See United States v. Nelson*, 66 F.3d 1036, 1045 (9th Cir. 1995).

**[2]** Both the preliminary instruction and the one given at the close of evidence focused on the concept that reasonable doubt does not require proof beyond all possible doubt. The court expressly informed the jury that the DNA example was nothing more than an example, and that it was not "saying [DNA] would apply in this case at all." There is absolutely no indication in the record that the jury attempted to apply the unwritten preliminary instructions rather than the final instructions, a copy of which was provided to the jury for use during deliberations. On these facts, it cannot be said that the reasonable doubt instructions conflicted with each other, or that "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the requirements of due process." *Ramirez v. Hatcher*, 136 F.3d 1209, 1211 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)) (internal quotation marks omitted). No error occurred.

## B.   *Sufficiency of the Evidence on the Firearms Charges*

### 1.   **Standard of Review**

We review *de novo* the sufficiency of the evidence supporting Defendants' § 924(c) convictions. *See United States v. Mann*, 389 F.3d 869, 874 (9th Cir. 2004). In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the prosecution and determine whether any rational jury could have found Defendants guilty of each element of the crime beyond a reasonable doubt. *Id.* at 878.

### 2.  Discussion

**[3]** To prove that Defendants violated 18 U.S.C. § 924(c)(1)(A), the government had to prove three elements: (1) that Defendants participated in the conspiracy to manufacture meth; (2) that they possessed one or more firearms; and (3) that their possession was in furtherance of the conspiracy to manufacture meth. 18 U.S.C. § 924(c)(1)(A); *Mann*, 389 F.3d at 879. We have defined possession as having actual or constructive control over an object. *See United States v. Casterline*, 103 F.3d 76, 78-79 (9th Cir. 1996). Possession of an item includes the ability and intent to exercise control over that item. *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir. 1985).

The possession requirement is no mere technicality. Rather, it is a linchpin of the statute. *See United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004) (citations omitted) (noting that "the mere presence of a firearm at the scene of drug trafficking is insufficient to support a conviction under section 924(c)(1)," and observing that "[t]he mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence.") (quoting *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002); H.R. Rep. No. 105-344 (1997), 1997 WL 668339, at *12)) (alteration omitted). "Our constructive possession precedents have refused to uphold convictions in the absence of some evidence tying the defendant to the particular contraband." *United States v. Barajas-Montiel*, 185 F.3d 947, 955-56 (9th Cir. 1999) (citing as an example *United States v. Reese*, 775 F.2d 1066, 1073-74 (9th Cir. 1985) (holding that the evidence was insufficient to support a conviction for unlawful possession where Reese shared the house with his wife.)).

In this case, firearms were found in the loft area, in the main part of the residence, in the garage and in the stairwell of the main part of the residence. The prosecution presented

no fingerprint evidence linking either Defendant to the firearms. *See Barajas-Montiel*, 185 F.3d at 956 (recognizing the absence of fingerprints as indicating a lack of possession). In addition, no witnesses linked the firearms to either Defendant. Unlike in *Krouse*, 370 F.3d at 966, where the weapons were located inside Krouse's home, the residence in this case belonged to neither Noriega nor Ruiz. Similarly, in *Mann*, firearms were found in one of the defendants' vehicle. *See Mann*, 389 F.3d at 879.

[4] Although a "co-conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy," *United States v. Fonseca-Caro*, 114 F.3d 906, 907 (9th Cir. 1997) (citation omitted), that vicarious liability is predicated upon proof that someone among the co-conspirators committed the substantive crime at issue. *See id.* at 908 (explaining that one of the co-conspirators testified that he carried the gun in question). This case involved no similar testimony or evidence connecting even one of the co-conspirators to any of the firearms at the scene.

[5] The government urges us to conclude that "somebody in that laboratory must have possessed the firearms." However, we cannot leap to that conclusion absent proof of possession of the firearms by at least one of the co-conspirators. None of the conspirators pled guilty to possession of the firearms; no one testified to possessing the firearms or seeing someone else in possession of them; and no fingerprint evidence was introduced linking any of the conspirators to the firearms. In short, the government failed to meet its burden of proving possession, an essential element of a § 924(c) charge. *See Mann*, 389 F.3d at 879 (setting forth the elements of a § 924(c) charge); *see also United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992) (noting that the government must prove the elements of charged offenses).

The most that can be said in favor of a finding of possession of the firearms is that Diaz, one of the co-conspirators,

resided on the premises where the drugs were found, and that Noriega and Ruiz both had access to the residence. However, access to the premises does not equate to possession. *See United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997) (holding that the government failed to prove constructive possession where defendant occupied residence with several other people) (citing *Reese*, 775 F.2d at 1073); *see also United States v. Frushon*, 10 F.3d 663, 665 (9th Cir. 1993) (noting that circuit case law still holds that joint occupancy of a home is not enough to show possession of contraband.).

In determining whether the guilty verdict is sustainable, we are required to evaluate the sufficiency of the *evidence*. The evidence in this case did not attribute possession of any of the firearms to any of the conspirators. Although Diaz pled guilty to conspiracy to manufacturing meth, he did not admit to possession of any of the firearms or attribute possession to any of his co-conspirators. Even construing the evidence in the light most favorable to the government, we remain unconvinced that a reasonable juror could have found beyond a reasonable doubt that the Defendants possessed any of the firearms found during the search.

We are not persuaded otherwise by *United States v. Ramos*, 147 F.3d 281 (3d Cir. 1998) — the case relied upon by the government — because that case does not present analogous facts. In *Ramos*, 147 F.3d at 283, two witnesses linked Antonio Ramos ("Tony") to the firearms discovered in the apartment to which only Ramos and one of his identified co-conspirators had access. In contrast, there was no evidence in this case regarding a finite number of identified individuals who had access to the subject premises.

At Ramos's trial, one witness testified that "Tony" had actually shown her a handgun on one occasion when she visited the apartment. *Id.* A second witness testified that when he went to the apartment to purchase drugs, "a large caliber silver handgun and a sawed-off shotgun [were] lying on the

table." *Id.* (parentheses omitted). The same witness testified that he observed "Tony" actually "pick up a gun." *Id.* Nothing even close to similar testimony was presented in this case to link any individual to the discovered firearms.

**[6]** In view of the mandatory nature of the sentence imposed for a violation of § 924(c); our precedent holding that the mere presence of weapons cannot support a conviction under § 924(c); and the government's obligation to prove the elements of possession, the argument that "somebody must have possessed the weapons because they were there" is insufficient evidence of control or intent to control the weapons by one or more identified individuals. *See United States v. Terry,* 911 F.2d 272, 278 (9th Cir. 1990) (explaining that "[i]n the more difficult situation where the premises are shared by more than one person," we have found constructive possession where "a party has knowledge of the weapon and both the power and the intention to exercise dominion and control over it."). The government has not cited to, and we are unaware of the existence of, any case affirming a finding of constructive possession where not one individual has been positively linked to the weapons. Accordingly, we conclude that there was insufficient evidence to support the firearms convictions, and the district court erred in denying Defendants' Rule 29 motions as to that count of the Indictment (Count 2).

## C.   Conclusion

The district court did not err in giving the jury instructions on reasonable doubt. However, the evidence was insufficient to support the convictions under § 924(c) beyond a reasonable doubt, because the government failed to establish that the Defendants possessed the firearms in furtherance of the conspiracy.

**[7]** Accordingly, the convictions for conspiracy to manufacture and distribute methamphetamine are AFFIRMED, and

the convictions for possession of firearms in furtherance of drug trafficking crimes are REVERSED. The sentences imposed are VACATED and this case is REMANDED for resentencing.

**AFFIRMED in part, REVERSED in part and REMANDED for Resentencing.**