**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 27 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>SUZETTE GULYAS GAL,<br><br>Defendant - Appellant. | No. 13-30241<br><br>D.C. No. 4:13-cr-00049-SEH-1<br><br>MEMORANDUM[*] |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>SUZETTE GULYAS GAL,<br><br>Defendant - Appellant. | No. 13-30242<br><br>D.C. No. 4:12-cr-00065-SEH-3 |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v. | No. 13-30244<br><br>D.C. No. 4:12-cr-00065-SEH-4 |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

ANDRAS ZOLTAN GAL,

        Defendant - Appellant.

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

STEVEN WILLIAM CARPENTER,

        Defendant - Appellant.

No. 13-30246

D.C. No. 4:12-cr-00065-SEH-2

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

KRISZTIAN ZOLTAN GEORGE GAL,

        Defendant - Appellant.

No. 13-30371

D.C. No. 4:12-cr-00065-SEH-5

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

MIKE ALFONS CAMPA,

        Defendant - Appellant.

No. 14-30012

D.C. No. 4:13-cr-00048-SEH-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-30013 |
| Plaintiff - Appellee, | D.C. No. 4:12-cr-00065-SEH-1 |
| v. | |
| MIKE ALFONS CAMPA, AKA Mike Heretel, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 2, 2015
Seattle, Washington

Before: BEA and MURGUIA, Circuit Judges, and KOBAYASHI, District Judge.[**]

I

Defendants/Appellants Suzette Gulyas Gal, Andras Zoltan Gal, Steven William Carpenter, Krisztian Zoltan George Gal, and Mike Alfons Campa appeal from their convictions and sentences in connection with a fraudulent investment scheme. Suzette and Campa also appeal from their convictions of criminal contempt.

---

[**] The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawaii, sitting by designation.

3

# I

Carpenter argues that the District of Montana was not a proper venue for the charges against him of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Carpenter waived this argument when he failed to raise it until after the jury returned the verdict. *See United States v. Marsh*, 144 F.3d 1229, 1242 (9th Cir. 1988). Even on the merits, the argument fails. The proposed business agreement that U.S. Oil and Gas sent to the Fort Peck Agency of the Bureau of Indian Affairs ("BIA") in Montana, and which Carpenter later emailed to potential investors, was sufficient to make venue proper on the mail fraud count. Similarly, Carpenter's multiple telephone calls to the Fort Peck Agency were a sufficient connection to Montana to render venue proper on the wire fraud count. *See United States v. Pace*, 314 F.3d 344, 349–50 (9th Cir. 2002) (holding that "venue is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was orchestrated" (internal quotation marks omitted)); *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001) (noting that wire fraud and mail fraud have analogous elements).

Carpenter also argues that his trial counsel rendered ineffective assistance in failing to object on venue grounds. But Carpenter points to no evidence in the record that would permit this Court to determine whether counsel had a tactical

4

reason for declining to object, and any inadequacy in counsel's performance is not obvious. *See United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000).

## II

Suzette and Andras contend that the district court committed reversible error in failing to sever their trials from Carpenter's. The district court did not plainly err. *See United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008); *see also United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008). Rather than being antagonistic, the Gals' and Carpenter's defenses were nearly identical: each disclaimed any knowledge that the investment schemes were fraudulent and tried to pin everything on Campa. *See Hernandez-Orellana*, 539 F.3d at 1002. Nor did the evidence against Carpenter have an unfairly prejudicial "spillover" effect; the record indicates that the jury could "reasonably be expected to compartmentalize the evidence as it relate[d] to separate defendants." *See United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011); *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (citation omitted) (internal quotation marks omitted); *United States v. DeRosa*, 670 F.2d 889, 898–99 (9th Cir. 1982).

## III

Suzette, Andras, and Krisztian each argue that the evidence introduced at trial was insufficient to permit their convictions of the charges in the indictment.

Suzette and Campa also argue that insufficient evidence supported their convictions of criminal contempt.

A

Suzette argues that there was insufficient evidence that she intended to defraud the investors in the oil and gas scheme. But Suzette signed for the BIA's notices that the oil and gas leases were cancelled. Suzette's continued participation in the scheme despite having notice that the leases were not valid permitted the jury to infer that she intended to defraud the scheme's investors. *See United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992).

Andras argues that the evidence was insufficient to show that he intended to defraud the investors in the oil and gas scheme. But Andras admitted to Krisztian that he knew that Campa obtained investments through fraud, and bank records from the account in which Andras permitted Campa to deposit the investment money showed that none of the funds were used for oil and gas drilling. Andras's continued participation despite these facts demonstrate an intent to defraud the oil and gas scheme's victims. *See Peters*, 962 F.2d at 1414.

Andras contends also that the evidence does not support his convictions of mail and wire fraud because he did not personally send a mailing or a wire transmission in furtherance of the oil and gas scheme. But Andras made at least

6

one call to a potential investor in furtherance of the scheme. Further, the record supports an inference that Andras acted as an aider and abettor. *See Hernandez-Orellana*, 539 F.3d at 1006–07.

Krisztian argues that the Government did not produce sufficient evidence to permit an inference that he agreed to participate in the oil and gas scheme charged in the indictment. We hold that the district court erred in failing to direct a judgment of acquittal on the conspiracy count against Krisztian. No evidence suggests that Krisztian knew of the oil and gas scheme charged in the indictment, much less that he knew that the scheme was fraudulent. At best, the evidence permits an inference that Krisztian knew of the fraudulent nature of the uncharged Arizona gold mine scheme. If Krisztian did not know of the oil and gas scheme's unlawful objective, he cannot be found to have agreed to participate in it. *See United States v. Krasovich*, 819 F.2d 253, 256 (9th Cir. 1987). We therefore reverse Krisztian's conviction of conspiracy under 18 U.S.C. § 371.[1]

B

Suzette argues that the district court's order excluding witnesses from the courtroom under Rule 615 was not sufficiently clear and definite to notify her that

---

[1] Because we reverse Krisztian's conviction for insufficient evidence, the rest of his contentions are moot.

she was not to discuss evidence presented at trial with witnesses yet to testify. Suzette's recorded telephone conversation with Campa established that Suzette knew that she was not to discuss evidence with him, permitting the district court to infer that its Rule 615 order was sufficiently "clear and definite." *See United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986).

Campa argues that the evidence was insufficient to show that he knew of the district court's Rule 615 order. First, Campa waived this argument by dedicating only five lines to it in his brief, and by citing neither the record nor any cases in support. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992). Second, the argument fails on the merits. Though Campa was not in the courtroom when the court issued the order, Tr. at 17, 21, *United States v. Campa*, No. 13-48 (D. Mont. Jan. 16, 2015), ECF No. 48, he admitted that his attorney advised him not to talk about the case with the other defendants. Moreover, Campa's silence when Suzette told him during the recorded telephone conversation that Campa may be disqualified from the case for discussing testimony with Suzette supports the conviction. If Campa were unaware of the district court's order, one might expect him to ask why discussing the case with Suzette would disqualify him and thereby deny him the opportunity to exonerate his family. The district court could reasonably infer from this evidence that Campa knew of the district court's Rule

8

615 order. *See Armstrong*, 781 F.2d at 706.

## IV

Suzette, Andras, and Carpenter argue that the district court abused its discretion in removing juror number one for cause. Andras also argues that the district court abused its discretion in preventing the defendants from asking certain questions of the venire. We review both assignments of error for abuse of discretion. *See United States v. Beard*, 161 F.3d 1190, 1193 (9th Cir. 1998); *United States v. Jones*, 722 F.2d 528, 529 (9th Cir. 1983).

## A

Suzette, Andras, and Carpenter contend that the district court abused its discretion in removing juror number one and replacing her with an alternate for two reasons: (1) the district court failed to weigh all relevant factors; and (2) the juror's complaints were not sufficient to warrant removal for cause. Both contentions lack merit. The district court remarked that it based its decision to remove juror number one "on all factors considered." *See Beard*, 161 F.3d at 1194. Further, the juror's severe anxiety regarding her service—so severe, in fact, that it prevented her from sleeping—justified the district court's decision to remove the juror. *See id.* at 1193–94. In any event, even if the district court abused its discretion in replacing the juror with an alternate, the defendants have

9

not shown that they were prejudiced by that decision.  *See United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir. 1995).

B

Andras argues that the district court abused its discretion in failing to ask the venire whether any juror had been the victim of financial fraud, and refusing to permit the defense to ask the venire "questions regarding financial fraud or starting any new business."  Reversal is not warranted because Andras has not explained why failure to explore the two topics was prejudicial.  *See Jones*, 722 F.2d at 529 (holding that a district court's refusal to ask questions posed by counsel is an abuse of discretion only if, as a result, voir dire is "not reasonably sufficient to test the jury for bias and partiality").

V

Suzette, Andras, and Carpenter each take issue with one or more evidentiary rulings at trial.

A

Suzette and Andras argue that evidence concerning the gold mine proceeds Campa deposited in Krisztian's bank accounts was irrelevant and unduly prejudicial.  Defendants first argue that the district court should not have admitted testimony describing Krisztian's $50,000 withdrawal from the bank accounts and

the parties' conduct afterward, including Campa and Suzette's payment of $1,000 to Carpenter. However, that evidence was probative of Carpenter's identity and connection to Campa, the other defendants, and the conspiracy. *See* Fed. R. Evid. 401. Defendants next argue that the district court should not have admitted evidence that the $50,000 in Krisztian's account originated from the fraudulent gold mine scheme. But it was the defendants, not the Government, who elicited testimony concerning the source of the proceeds in Krisztian's accounts after the district court ruled that evidence irrelevant. The defendants therefore "opened the door" to that evidence's admission. *See United States v. Mendoza-Prado*, 314 F.3d 1099, 1105 (9th Cir. 2002). In any event, the fraudulent nature of the gold mine funds, Krisztian's knowledge that the funds in his bank accounts were obtained through fraud, and Campa's $1,000 payment to Carpenter from those funds was probative that the defendants (aside from Krisztian) were engaged in a conspiracy involving the oil leases. The district court therefore did not abuse its discretion in admitting this evidence. *See United States v. Mateo-Mendez*, 215 F.3d 1039, 1042 (9th Cir. 2000).

B

Suzette and Andras next argue that photographs the Government presented of family vacations in Hawaii, the Virgin Islands, and elsewhere were irrelevant

11

and unfairly prejudicial. But the photographs tended to show that purported investments in the oil and gas scheme were not spent on oil and gas development, particularly where Campa, Suzette, Andras, and Krisztian had no significant employment outside the scheme when the photographs were taken. *See* Fed. R. Evid. 401. The district court's determination that any risk of prejudice did not outweigh the photographs' probative value was within its discretion. *See* Fed. R. Evid. 403; *United States v. Paguio*, 114 F.3d 928, 931 (9th Cir. 1997) (finding no abuse of discretion in admitting a defendant's application for a loan to buy a BMW as evidence of knowledge of her borrowing capacity, notwithstanding risk that it would paint her as "an extravagant person").

## C

Suzette argues that the district court abused its discretion in allowing testimony regarding her telephone conversation with Campa while failing to admit a recording of that conversation, in violation of the "rule of completeness" codified in Rule 106 of the Federal Rules of Evidence. However, when introduced by Suzette, the recording was hearsay and therefore inadmissible under Rule 106. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).

## D

Carpenter argues that an affidavit filed by Yahoo! Inc.'s custodian of records

under Rule 902(11) of the Federal Rules of Evidence supplied insufficient foundation to admit a number of emails as evidence that Carpenter sent the emails to investors. However, the affiant did not attest that Carpenter sent the emails, but only that Yahoo made a record of each email as it was sent or received from three email addresses. *See* Fed. R. Evid. 803(6) (hearsay exception for records of a regularly conducted activity); *United States v. Linn*, 880 F.2d 209, 216 (9th Cir. 1989) (holding that an automatically generated record of a telephone call was admissible under Rule 803(6) as evidence of the call's date and time, origin, and destination), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999). Other evidence established that Carpenter sent the emails. Many victims authenticated the emails, and the emails reflect on their faces that they were sent by "Steve Carpenter."

Carpenter also argues that admitting the emails based on Yahoo's affidavit violated the Confrontation Clause. No violation occurred because an affidavit offered only to authenticate a record is not testimonial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322–24 (2009); *cf. United States v. Anekwu*, 695 F.3d 967, 976–77 (9th Cir. 2012).

## VI

Andras argues that the district court's instruction that the jury regard

13

Campa's testimony with special skepticism contradicted its earlier admonitions that the jury was to be the ultimate judge of credibility. The district court did not abuse its discretion. *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010). Because Campa was an accomplice of Andras's in the oil and gas scheme, an accomplice witness instruction was permissible. *See United States v. Tirouda*, 394 F.3d 683, 687–88 (9th Cir. 2005). The instruction did not intrude upon the jury's province as arbiter of credibility; that an accomplice witness may have an interest in exculpating the defendant is just one factor that the jury may consider in weighing credibility. *See id.*, 394 F.3d at 687.

## VII

Suzette and Campa argue that the district court improperly included the $4.5 million loss resulting from the gold mine scheme in their relevant conduct for sentencing purposes and in their restitution orders.

We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Staten*, 466 F.3d 708, 713 (9th Cir. 2006) (alteration omitted) (citation omitted) (internal quotation marks omitted). Similarly, "[t]he legality of an order of restitution is reviewed *de novo*, and factual findings

14

supporting the order are reviewed for clear error." *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014) (citation omitted) (internal quotation marks omitted). If the district court acted within statutory authority, "a restitution order is reviewed for abuse of discretion." *Id.* (citation omitted) (internal quotation marks omitted).

A

Suzette and Campa argue that the district court improperly enhanced their offense levels by twenty-two levels based on the $4.5 million investment in the gold mine scheme. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1). To the contrary, the gold mine scheme and the oil and gas scheme were parts of a "common scheme or plan" for sentencing purposes because they shared common actors, a common purpose, and a similar mode of operation. *See* U.S. Sentencing Guidelines Manual § 1B1.3(a)(2) & cmt. 9(A); *United States v. Armstead*, 552 F.3d 769, 779 (9th Cir. 2008).

Suzette and Campa argue that the gold mine investment should not have been included in their relevant conduct because the record did not contain evidence that the gold mine scheme was a fraud. The Government presented evidence that the principals of the gold mine scheme falsely represented that the mine was operational and made implausible assertions about its profitability, permitting the inference that the scheme was a fraud. The district court therefore did not abuse its

15

discretion in including the gold mine investment in Suzette's and Campa's relevant conduct.

## B

Suzette and Campa each argue that the district court improperly included the $4.5 million gold mine investment in their restitution orders because they were not convicted of fraud based on the gold mine scheme. However, the gold mine scheme was sufficiently related to the oil and gas scheme to permit its inclusion in the restitution order because it was perpetrated in the same time period by at least one common actor using similar means. *See United States v. Brock-Davis*, 504 F.3d 991, 998–99 (9th Cir. 2007).

## VIII

Carpenter argues that the district court committed reversible error in failing to conduct an inquiry into his requests for substitute trial counsel. The district court did not abuse its discretion in denying the requests without further inquiry. *See United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986). Carpenter first requested substitution on the second day of trial, when appointing new counsel would have required a continuance. *See id.* Further, the district court did inquire into the reasons for Carpenter's second request during the sentencing hearing, and found it based on Carpenter's desire to file a baseless motion.

16

## IX

Campa argues that the district court's pretrial order restraining dissipation of the funds Campa obtained from the gold mine scheme burdened his Sixth Amendment right to counsel of his choice. No Sixth Amendment violation occurred. The Government established probable cause to believe that the funds were obtained through fraud and were therefore subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(D)(v) & (vi). Accordingly, Campa had no right to use them to pay for an attorney. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 632–33 (1989); *United States v. Monsanto*, 491 U.S. 600, 615 (1989).

Campa also argues that the district court erred in refusing to release the restrained funds so that his mother may use them to pay "living expenses." Campa presents no authority or argument for the proposition that a court may release funds restrained as subject to forfeiture in order to meet the personal needs of the defendant or his family. Accordingly, Campa has waived this issue. *See Acosta-Huerta*, 7 F.3d at 144.

## X

Campa argues that the district court should have granted his motion to withdraw his guilty plea because he did not know when he entered the plea that the gold mine investment would be included in his relevant conduct. The district court

17

did not abuse its discretion in denying the motion.  *See United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011).  That Campa's recommended sentence was higher than he expected is not a "fair and just reason" to permit him to withdraw his plea.  *See United States v. Nostratis*, 321 F.3d 1206, 1211–12 (9th Cir. 2003).

## CONCLUSION

Krisztian Gal's conviction of conspiracy under 18 U.S.C. § 371 is **REVERSED** and the cause **REMANDED** for entry of a judgment of acquittal.  In all other respects, the judgments of the district court in the above-captioned case are **AFFIRMED**.