**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

HAO QUANG TRAN,
*Defendant-Appellant.*

No. 07-30270

D.C. No.
CR-06-00296-10-
JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
August 6, 2008—Seattle, Washington

Filed June 24, 2009

Before: Harry Pregerson, William C. Canby, Jr. and
John T. Noonan, Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge Noonan

**COUNSEL**

Allen M. Ressler, John C. Dorgan, Browne & Ressler, Seattle, Washington, for the defendant-appellant.

Catherine L. Chrisham, Susan M. Roe, Assistant United States Attorneys, Seattle, Washington, for plaintiff-appellee the United States of America.

**OPINION**

PREGERSON, Circuit Judge:

Defendant-Appellant Hao Quang Tran ("Tran") appeals his jury convictions for conspiracy to possess more than 100 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and § 846, and two counts of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2. Tran argues that the district court erred by admitting a portion of a co-defendant's redacted plea agreement as substantive evidence under Federal Rule of Evidence 801(d)(1)(A). Tran further argues that there was insufficient evidence supporting his convictions. Although we find that the district court did not err in its evidentiary rulings, we reverse Tran's convictions because there was insufficient evidence to support them.

## I. BACKGROUND

### A. The Marijuana Importation and Distribution Scheme

In June 2006, the Department of Homeland Security, Immigration and Customs Enforcement (ICE) was investigating a marijuana importation and distribution organization. Undercover federal agents arranged to rent a warehouse facility to an organization suspected of importing marijuana, while maintaining surveillance of the facility. Agents observed a trailer truck being driven into the warehouse. Then a man drove a series of different cars into and out of the warehouse. The trailer was then removed.

After monitoring the warehouse for approximately two weeks, the agents obtained a search warrant with approved delayed notification. Inside the warehouse, the agents found an insulated cargo container. Some insulation had been

removed from the walls of the container to make a space for contraband.

On June 27, 2006, a new trailer was brought into the warehouse. Agents followed the same man who had been observed earlier as he drove cars into and then out of the warehouse and over to the mall. Agents stopped each car after it departed from the mall. They found marijuana in every car. In total, the agents seized approximately 344 kilograms, or over 700 pounds, of marijuana.

Tran, the defendant in this case, was a passenger in a silver Mustang, one of the cars stopped by the agents. The silver Mustang was being driven by Tam Nguyen ("Nguyen"). The car was registered not to Tran or Nguyen, but to a third party. Nothing was found in the backseat of the car, but agents discovered approximately twenty-seven kilograms, or slightly over sixty pounds, of marijuana in garbage bags inside the trunk. Tran and Nguyen were promptly arrested.

## B.   Tran's Trial

Tran was charged with conspiracy to possess more than 100 kilograms of marijuana with intent to distribute and two counts of possession of marijuana with intent to distribute. Nguyen, the driver of the silver Mustang, pleaded guilty to possession of marijuana with intent to distribute. Tran pleaded not guilty and proceeded to trial.

The government called Nguyen to testify against Tran. Nguyen stated that he had known Tran for about a year and that Tran had lived with him for about a month prior to their arrests. According to Nguyen, Tran was with him in the car when Nguyen picked up the marijuana, but Tran was not involved in the marijuana distribution scheme. Nguyen stated that Tran was with him at the time of their arrests because Nguyen was tired that day and asked Tran "to go hang out" with him.

The prosecuting attorney questioned Nguyen regarding how he learned of the drug transaction. According to Nguyen, he was at home alone when he received a phone call from a Vietnamese-speaking woman regarding the marijuana pick up. Nguyen stated that Tran was staying with him at the time, but was not present during the phone call. Nguyen testified that the woman gave him a code and told him that someone would call him when it was time to pick up the marijuana.

Nguyen testified that a man, later identified as Britton, the same man seen driving cars into and out of the warehouse, called him, identified Nguyen by his code, and arranged to meet him at the McDonald's at the mall. At the McDonald's, Tran was sitting and eating while Nguyen spoke with Britton. Britton drove away in Nguyen's car. Half an hour later, Britton brought the car back to Nguyen. Nguyen testified that this was the first time he picked up a load of marijuana. Nguyen did not remember what he told the prosecuting attorney and an ICE agent, Agent Ingersoll, during an interview a week before he testified at trial regarding Tran's involvement in the drug operation. He also did not remember saying in the interview that Tran set up the drug transaction. He testified that he did not know whether Tran had a connection with the people in Canada who were supplying the marijuana.

The government called Agent Ingersoll to impeach Nguyen. The district court allowed Agent Ingersoll's testimony not for its truth, but only to impeach Nguyen's credibility. Agent Ingersoll stated that he was present in a pre-trial interview with Nguyen, during which Nguyen told a very different story than what he had recounted at trial. According to Agent Ingersoll, Nguyen stated that he had worked for Tran, and that he expected to be paid by Tran for transporting the marijuana. According to Agent Ingersoll, Nguyen had further stated that the woman that Nguyen spoke to on the phone was a contact of Tran's, and that Tran was standing next to Nguyen during the phone conversation. Finally, according to Agent Ingersoll, Nguyen said that Tran was with him during

the marijuana exchange because it was the first time that Nguyen had picked up marijuana, and Tran was teaching him what to do.

The district court instructed the jury that Nguyen's unsworn pre-trial statements to Agent Ingersoll were admitted only to assist the jury in judging Nguyen's credibility. The court explained that Agent Ingersoll's testimony could not be considered for any purpose other than Nguyen's credibility.

The government then sought to admit a redacted portion of Nguyen's plea agreement under Federal Rule of Evidence 801(d)(1)(A).[1] The Statement of Facts in the plea agreement reads in relevant part: "Tam Phy Quy Nguyen, together with Hao Quang Tran, picked up approximately 70 pounds of marijuana for redistribution that night." Tran objected to the admissibility of the plea agreement, arguing that the statement in the plea agreement was not inconsistent with Nguyen's in-court testimony, and that the introduction of the plea agreement would violate his right of confrontation. The district court admitted the evidence over Tran's objection.

Under Federal Rule of Evidence 404(b)[2], the district court also admitted, over Tran's objection, evidence that Tran had previously been involved in marijuana deals. That evidence was admitted solely for the purpose of showing Tran's knowl-

---

[1]Federal Rule of Evidence 801(d)(1)provides in relevant part that a prior statement by a witness is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ."

[2]Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, *knowledge*, identity, or absence of mistake or accident, . . . ." (emphasis added).

edge. Two government witnesses, Tham Pham and Chad Shaw, testified regarding Tran's previous dealings in marijuana.

At the time of his testimony, Pham pleaded guilty to a drug related charge in a different jurisdiction. Pham admitted that he was testifying against Tran in the hopes that his cooperation would aid him at sentencing.

Pham stated that Tran used to work for him, moving drug money from California to Washington. According to Pham, in 2001, he had been involved in a three-month operation moving marijuana from Canada to the United States using trailer trucks. Pham testified that in that operation, individuals would bring their cars to a designated location, leaving their keys on the visors of their cars. An unidentified individual (never seen by Pham) would place the marijuana in the cars.

Pham also testified that in 2003 he twice received marijuana from Tran. A friend of Pham's in Canada would bring the marijuana into the United States, then Tran would pick it up and bring it to Pham in Washington state.

The government also presented Chad Shaw as a witness. Shaw had previously been convicted for conspiring to distribute the drug MDMA, also known as ecstasy. Shaw testified that he worked for Pham, delivering marijuana from Seattle to Minnesota in 2004. Shaw stated that he met Tran through Pham, and that on several occasions Tran was present when marijuana was being delivered.

The district court expressly limited the admissibility of the evidence presented by Pham and Shaw to the issue of Tran's knowledge.[3]

---

[3]The district court instructed the jury: "You have heard evidence of other crimes engaged in by the defendant. You may consider that evidence only as it bears on the defendant's knowledge and for no other purpose."

In addition to the testimony of Agent Ingersoll, Nguyen, Pham, and Shaw, the government's case in chief involved the testimony of several ICE agents. In addition to impeaching Nguyen's testimony, Agent Ingersoll testified about his role in renting the warehouse space to members of the drug operation. He did not mention Tran during his testimony. Agent Cagen also testified regarding the plan to rent the warehouse space, and also did not mention Tran in his testimony. Agent Abeyall testified that he was present when Tran and Nguyen were arrested and that there was marijuana in the trunk of the car. A final agent testified regarding the total weight of marijuana found as a result of the ICE operation, and the amount of marijuana found in the car driven by Nguyen. At the close of the government's case, Tran moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the government had not made a prima facie case on all the elements of the charged offenses. The motion was denied.

The jury found Tran guilty on all three counts. Tran was sentenced to a five-year term of imprisonment. On appeal, he argues that: (1) the district court erred by admitting a statement in Nguyen's plea agreement as a prior inconsistent statement under Federal Rule of Evidence 801(d)(1)(A); (2) the district court erred by concluding that Nguyen's plea agreement was "given under oath" and therefore admissible as substantive evidence of Tran's guilt; and (3) there was insufficient evidence from which the jury could find Tran guilty of the charges. We discuss each of Tran's arguments in turn.

## II. DISCUSSION

### A. Nguyen's Plea Agreement Was Admissible as a Prior Inconsistent Statement.

Tran first contends that the district court erred when it concluded that Nguyen's plea agreement constituted a prior

inconsistent statement under Rule 801(d)(1)(A). We review a district court's evidentiary rulings for abuse of discretion. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc); *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001) ("We review the admission of evidence under an exception to the hearsay rule for abuse of discretion."). "Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *United States v. Corona*, 34 F.3d 876, 882 (9th Cir. 1994).

**[1]** Rule 801(d)(1)(A) provides that a trial witness's out-of-court statement is not hearsay if the statement is "inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." We have stated that "trial judges must retain a high degree of flexibility in deciding the exact point at which a prior statement is sufficiently inconsistent with a witness's trial testimony to permit its use in evidence." *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977).

The district court ruled that the statement in Nguyen's plea agreement was inconsistent with Nguyen's in-court testimony. We conclude that the court by so ruling did not abuse its discretion. Nguyen's in-court testimony was vague and evasive. He testified that he picked up the marijuana because he was "young and stupid and did some stupid things" and that he was in the car on that night to "pick up whatever was in the car." Nguyen conceded that Tran was with him on that night, but stated that Tran was not involved in the drug deal. Nguyen also testified that he did not remember the names of the people who told him about the marijuana transportation scheme. And although he could remember meeting with the prosecuting attorney and Agent Ingersoll the week before his testimony, he did not remember what he had told them about Tran's involvement.

**[2]** The portion of Nguyen's plea agreement that was admitted into evidence was inconsistent with Nguyen's reluc-

tant and evasive in-court testimony. Under an abuse of discretion standard, it was not error for the district court to admit this statement. Accordingly, we affirm the district court's ruling admitting the plea agreement's statement.

### B.    The District Court Did Not Plainly Err by Concluding Nguyen's Plea Agreement was "Given Under Oath."

Tran next argues that the plea agreement was not admissible as substantive evidence against him because it was not "given under oath." Because Tran did not object to the use of Nguyen's plea agreement statement as substantive evidence at the time of trial, we review for plain error. *See Jones v. United States*, 527 U.S. 373, 388 (1999). Under a plain error standard, relief is not warranted unless there is: (1) an error; (2) that was plain; and (3) that affected the defendant's substantial rights. *Id.* at 389. Even if these conditions are met, reversal is discretionary and will be granted only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dallman*, 533 F.3d 755, 761 (9th Cir. 2008) (*quoting United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc)).

**[3]** It was not plain error for the court to admit into evidence Nguyen's plea agreement statement that "Tam Phu Quy Nguyen, together with Hao Quang Tran, picked up approximately 70 pounds of marijuana for re-distribution that night[ ]" as substantive evidence against Tran. Nguyen's redacted plea agreement states that Nguyen "understands that before entering this plea of guilty, he will be placed under oath." No evidence was presented that the trial court departed from the customary practice of placing Nguyen under oath before Nguyen signed the plea agreement. A transcript of the Nguyen's plea hearing shows that Nguyen was in fact under oath when he pleaded guilty in court. While under oath, Nguyen also agreed that he had carefully reviewed the written

plea agreement, and that all the terms of his agreement with the government were contained therein.

**[4]** Moreover, the district court's admission of Nguyen's plea agreement including the single statement noting Tran's presence with Nguyen does not "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Garcia-Guizar*, 160 F.3d 511, 516 (9th Cir. 1998). There was plenty of other evidence in the record—including Nguyen's testimony that Tran was with him on the night they were arrested, and the testimony of the ICE agent who arrested Nguyen and Tran—showing that Tran was together with Nguyen the night of the drug deal.

### C. There Was Insufficient Evidence Supporting the Charges Against Tran.

Tran also contends that there was insufficient evidence to support his convictions for conspiracy to possess marijuana with intent to distribute, and for two counts of possession of marijuana with intent to distribute. We review de novo a challenge to the sufficiency of the evidence. *United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir. 2001). "Viewing the evidence in the light most favorable to the government, we must determine whether any rational jury could have found [the defendant] guilty of each element of the crime beyond a reasonable doubt." *United States v. Esquivel-Ortega*, 484 F.3d 1221, 1224 (9th Cir. 2007). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

#### 1. Conspiracy Conviction

**[5]** Tran argues that the government failed to prove that he participated in the conspiracy to possess marijuana for distribution. To successfully prosecute Tran on the conspiracy

charge, the government was required to prove: (1) that within five years leading up to and including June 27, 2006, there was an agreement between two or more people to commit the crime of possessing marijuana with the intent to distribute it; and (2) that Tran became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it.

"[O]nly a slight connection is necessary to support a conviction of knowing participation" in a conspiracy. *United States v. Sanchez-Mata*, 925 F.2d 1166, 1167 (9th Cir. 1991). " '[S]light connection' in this context does not mean that the government's burden of proving a connection is slight." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).

**[6]** Viewing the evidence in the light most favorable to the government, the evidence was insufficient to show that Tran had even a slight connection to the conspiracy. The principal evidence presented to the jury was:

- The in-court testimony of Nguyen, in which Nguyen stated that Tran was present in the car during the drug transaction but denied that Tran was involved in the drug conspiracy.

- The testimony of government agents describing the marijuana distribution operation generally, but not mentioning any role by Tran in the conspiracy.

- A single sentence in Nguyen's plea agreement stating that "Tam Phu Quy Nguyen, together with Hao Quang Tran, picked up approximately 70 pounds of marijuana for re-distribution that night."

- The testimony of Agent Ingersoll admitted solely for impeachment, recounting that, during a pre-

trial interview with the FBI and the prosecuting attorney, Nguyen had implicated Tran in the drug conspiracy.

• The testimony of two government witnesses, Pham and Shaw, describing their prior drug dealings with Tran, admitted for the limited purpose of showing Tran's knowledge.

Once these pieces of evidence are confined to the purposes for which they were admitted, the government's proof against Tran only amounts to: (1) Tran's presence as Nguyen's passenger during the marijuana deal; and (2) Tran's *knowledge* of marijuana distribution tactics, based on the testimony of Pham and Shaw that was admitted for the limited purpose of showing Tran's knowledge under Rule 404(b).

[7] The evidence presented against Tran and the reasonable inferences drawn from that evidence do not support even a slight connection between Tran and the conspiracy. The evidence at trial showed the sophisticated drug distribution ring and named several individuals connected to it. Tran's name, however, was not mentioned during that testimony. Tran's name was mentioned only in connection with his arrest. Tran did not own the silver Mustang carrying marijuana in the trunk, nor was he the driver. No evidence was introduced at trial from which it could be inferred—much less proved beyond a reasonable doubt—that Tran participated in the conspiracy in any manner.

[8] Tran's presence as a passenger in the silver Mustang while the marijuana was transported, and his knowledge of marijuana and marijuana distribution was insufficient as a matter of law to establish his guilt on the conspiracy charge. "It is not a crime to be acquainted with criminals or to be physically present when they are committing crimes." *Herrera-Gonzales*, 263 F.3d at 1095. "Our cases have established that presence at the location of a conspiracy's activities,

while the activities are taking place, knowing that they are taking place, without proof of intentional participation in the conspiracy, cannot support a conspiracy conviction." *Id.* at 1097.

Under our case law, Tran's conviction on the conspiracy charge cannot stand. Two other cases in which we found insufficient evidence of participation in a conspiracy are illustrative.

In *Sanchez-Mata*, law enforcement agents linked a silver Audi to a remote location where marijuana was discovered. 925 F.2d at 1167. Sanchez-Mata was never seen in that vicinity. *Id.* When officers stopped the silver Audi, Sanchez-Mata was a passenger. *Id.* The agents could smell marijuana from the outside of the car, and discovered 141 pounds of marijuana in the trunk of the Audi. *Id.* Sanchez-Mata did not resist arrest or carry a weapon. *Id.* There were no drugs in the passenger compartment of the Audi. Sanchez-Mata did not own the car, nor did he have a key to it. His fingerprints were not on the drugs. *Id.* At trial, the government offered evidence that Sanchez-Mata previously pleaded guilty to a drug-related charge. *Id.* at 1168. This evidence was admitted for the limited purpose of showing that Sanchez-Mata "knew what marijuana smelled like and must have recognized the strong odor present." *Id.* Sanchez-Mata was convicted of conspiracy to possess with intent to distribute and possession with intent to distribute marijuana. *Id.* at 1167. We reversed both convictions. *Id.* at 1170.

With respect to Sanchez-Mata's conspiracy conviction, we observed that there was insufficient evidence of even a slight connection between the defendant and the conspiracy. *Id.* at 1167-68. Although the government had offered evidence from which the jury could have concluded that Sanchez-Mata knew that marijuana was present, we held that "knowledge that drugs are present is not enough to prove involvement in a drug conspiracy." *Id.* at 1168 (*citing United States v. Pena-*

*gos*, 823 F.2d 346 (9th Cir. 1987), *United States v. Lopez*, 625 F.2d 889 (9th Cir. 1980), and *United States v. Cloughessy*, 572 F.2d 190 (9th Cir. 1977)). Although it was undisputed that a conspiracy existed, there was insufficient evidence from which a rational jury could have concluded that Sanchez-Mata was a participant in that conspiracy. *Sanchez-Mata*, 925 F.2d at 1170.

In *United States v. Estrada-Macias*, 218 F.3d 1064, 1064 (9th Cir. 2000), the defendant was convicted of conspiracy to manufacture methamphetamine. Drug Enforcement Administration ("DEA") agents learned of large shipments of pseudoephedrine tablets, often used to make methamphetamine. *Id.* at 1065. The tablets were delivered to an apartment. *Id.* Agents followed a man, Ramirez-Vasquez, driving a truck carrying ten cases of the tablets from that first apartment to a second apartment. *Id*. Less than two hours later, a car driven by another man, Garcia, arrived at the second apartment. *Id.* The car was stopped and Garcia was questioned. *Id.* Estrada-Macias was a passenger in that car. *Id.*

That same day, the agents learned that a second shipment of tablets was being shipped to another house. *Id.* Within hours of the delivery of the tablets to that house, Garcia and Estrada-Macias were observed being picked up by Ramirez-Vasquez. *Id.*

After obtaining a warrant, the agents searched the house and a trailer parked in the driveway of the house. *Id.* They found substantial evidence that methamphetamine was being manufactured in the trailer. *Id.* Estrada-Macias, Vasquez-Ramirez, and Garcia were all arrested. *Id.* at 1066. Estrada-Macias initially lied to the agents about where he lived, but quickly admitted that he had been living in the trailer for the preceding three months. *Id.* Estrada-Macias was convicted of conspiracy to manufacture methamphetamine. *Id.*

In reversing that conviction, we held that the evidence was "certainly sufficient to raise a strong inference that [Estrada-

Macias] must have known that several individuals living around him were engaged in a conspiracy to manufacture methamphetamine. That inference is not strong enough to permit conviction. 'Mere casual association with conspiring people is not enough.' " *Id.* (*quoting Cloughessy*, 572 F.2d at 191). Absent evidence of Estrada-Macias's participation in the conspiracy, his knowledge of the conspiracy, and sleeping in a trailer used to manufacture methamphetamine was insufficient to support his conviction. *Id.*; *see also Herrera-Gonzalez*, 263 F.3d at 1097 (discussing *Estrada-Macias*).

Like the appellants in *Sanchez-Mata* and *Estrada-Macias*, Tran was clearly present when a drug conspiracy was underway. Law enforcement officers and co-defendant Nguyen testified that Tran was the passenger in a car that was carrying a large quantity of marijuana in its trunk. And as in *Sanchez-Mata* and *Estrada-Macias*, a rational trier of fact could have inferred that Tran had knowledge of the presence of drugs and that a drug conspiracy was underway.

**[9]** As in *Sanchez-Mata* and *Estrada-Macias*, however, the government produced insufficient evidence from which a rational jury could have concluded that Tran had even a slight connection to the conspiracy. Tran's name was never mentioned by the law enforcement officers who described the marijuana smuggling operation at Tran's trial. Tran did not drive the car carrying the marijuana, nor was he the owner of that car. The marijuana was found in the trunk of the car, but not in the passenger compartment with Tran. The government urges us to affirm Tran's convictions, but it did not even attempt to distinguish Tran's case from *Sanchez-Mata* or *Estrada-Macias*, nor did it point to any cases in support of its position.

The evidence against Tran was not sufficient to support his conspiracy conviction. The testimony by two government witnesses, Pham and Shaw, attesting to Tran's earlier connections with marijuana distribution were admitted solely for the

limited purpose of showing that Tran knew what marijuana was and how those involved in a marijuana conspiracy distribute the contraband. Agent Ingersoll's testimony recounting what Nguyen, the driver of the silver Mustang, told both him and the prosecuting attorney about Tran's role in the conspiracy was admitted solely to impeach Nguyen's credibility and for no other purpose. The court acknowledged that these two pieces of evidence were admitted for those limited purposes.

[10] Lastly, there is the single sentence in Nguyen's redacted plea agreement's statement of facts that "Tam Phu Quy Nguyen, together with Hao Quang Tran, picked up approximately 70 pounds of marijuana for redistribution that night." A rational jury could not find beyond a reasonable doubt that Tran was guilty of conspiracy on the basis of Nguyen's statement, which supports no more than Tran's presence at the site of conspiratorial conduct carried on by others. Accordingly Tran's conviction for conspiracy to possess marijuana with the intent to distribute is vacated.

### 2. Possession with the Intent to Distribute Convictions

To successfully prosecute Tran on the charges of possession of marijuana with intent to distribute, the government was required to prove: (1) that Tran knowingly possessed marijuana on June 27, 2006 (the date of his arrest); and (2) that he possessed it with the intent to distribute it, or that he aided and abetted Nguyen in the commission of the crime.

[11] A conviction for possession with intent to distribute may be based on one of three legal theories: (1) co-conspirator liability, *United States v. Pinkerton*, 328 U.S. 640, 645-47 (1946); (2) aiding and abetting, *United States v. Savinovich*, 845 F.2d 834, 838 (9th Cir. 1988); and (3) exercising dominion and control over the contraband. *United States v. Behanna*, 814 F.2d 1318, 1319 (9th Cir. 1987). *Sanchez-Mata*, 925 F.2d at 1168. Because the government

failed to prove that Tran was part of a conspiracy, Tran cannot be guilty of possession with intent to distribute on a co-conspirator theory. *Id.*

With respect to the aiding and abetting theory, we explained in *Sanchez-Mata*:

> Aiding and abetting . . . makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy. *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1948). But it is necessary that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Id.* at 619.

*Id.* at 1168-69.

**[12]** The government has not offered sufficient evidence from which a rational jury could have found Tran guilty of possession on an aiding and abetting theory. The evidence and the reasonable inferences drawn from it support only a finding that Tran was present as a passenger in the silver Mustang and aware that the car contained marijuana. No evidence was offered from which a rational jury could find that Tran "consciously share[d]" in Nguyen's criminal act of possessing the marijuana with the intent to distribute it. *Sanchez-Mata*, 925 F.3d at 1169. Therefore, an aiding and abetting theory does not support Tran's convictions for possession with intent to distribute.

Finally, the government may prove possession with intent to distribute by showing that Tran exercised dominion and control over the contraband. Under this theory, "the government must prove that the defendant both knows of the presence of the contraband and has the power to exercise dominion and control over it." *Sanchez-Mata*, 925 F.2d at 1169 (*citing Behanna*, 814 F.2d at 1319). Again, "[m]ere

proximity to contraband, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession." *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir. 1985). Furthermore, "it is 'well established that a passenger may not be convicted unless there is evidence connecting him with the contraband, other than his presence in the vehicle.' " *Sanchez-Mata*, 925 F.2d at 1169 (*quoting United States v. Ramos*, 476 F.2d 624, 625 (9th Cir. 1973)).

Again, our decision in *Sanchez-Mata* compels the reversal of Tran's convictions for possession with intent to distribute. In *Sanchez-Mata*, the government was able to show that the defendant was present in a car carrying 141 pounds of marijuana in its trunk. *Sanchez-Mata*, 925 F.2d at 1167. The car smelled so strongly of marijuana that the police could smell the drug from outside the vehicle. *Id.* The government offered evidence in the form of Sanchez-Mata's prior drug conviction which showed that Sanchez-Mata knew what marijuana smelled like. *Id.* at 1168. Nevertheless, we held that the government could not prevail on this theory because it failed to show that Sanchez-Mata had dominion or control over the drugs. *Id.* at 1169. We observed that Sanchez-Mata did not have a key to the car or its trunk, was not driving the car, and did not own the car. *Id.* The evidence showed that Sanchez-Mata was a passenger in the car, but no evidence connected him to the drugs. *Id.*

**[13]** Likewise, Tran was clearly present in the silver Mustang when law enforcement stopped it. There was a large quantity of marijuana in the trunk of the car. The jury could have reasonably concluded that, based on the testimony regarding Tran's past conduct relating to marijuana, he knew that marijuana was in the car. There was not, however, other evidence presented which would show that Tran exercised dominion or control over that marijuana. Tran was not driving the car, and the car was not his. Nothing but his presence connected him to the marijuana in the car. *See id.* (*quoting*

*Ramos*, 476 F.2d at 625 (explaining that "it is 'well established that a passenger may not be convicted unless there is evidence connecting him with the contraband, *other than his presence in the vehicle.*") (emphasis added))); *accord Esquivel-Ortega*, 484 F.3d at 1225. Accordingly, the convictions for possession with intent to distribute also is vacated.

## CONCLUSION

The district court did not err by admitting a redacted portion of Nguyen's plea agreement under Federal Rule of Evidence 801(d)(1)(A). The evidence against Tran was, however, insufficient as a matter of law to support his conviction for conspiracy or his convictions for possession with intent to distribute. His convictions are reversed.

**REVERSED.**

---

NOONAN, Circuit Judge, dissenting:

The redacted plea agreement of co-conspirator Nguyen, admitted as substantive evidence against Tran, states:

> *Tam Phu Quy Nguyen, together with Han Quong Tran, picked up approximately 70 pounds of marijuana for redistribution that night.* [italics supplied]

Nguyen's statement is sufficient to establish that Tran was a participant in the conspiracy to distribute marijuana and was himself in possession of marijuana with intent to distribute. The co-conspirator Nguyen declares clearly and unequivocally that together he and Tran picked up the 70 pounds for redistribution.

The majority, faced with this statement, says that it "supports no more than Tran's presence at the time of conspirato-

rial conduct carried on by others." The majority misreads the sentence. The sentence does not say that Tran stood by while Nguyen picked up the drugs. The sentence states that Nguyen and Tran together picked up the drugs for distribution. The verb "picked up" is an active verb. The modifier "together" refers to joint action by the two conspirators. In any court in the land Nguyen's statement, if believed, would establish Tran's guilt of the crimes with which he was charged.

In addition to this evidence, sufficient in itself to prove Tran's guilt, the government offered the following facts confirmatory of the conspiracy and of Tran's more than slight connection to it:

A well-organized drug ring was smuggling marijuana from Canada and distributing it in the U.S. The gang was operating out of a suburban warehouse where cars showed up to get batches of the drug. Tran was in one of the cars loaded from the warehouse. Nguyen, the driver, 22 at the time, appears to be naive if not stupid. It's unlikely that the gang would let him have 70 pounds of the drug without having him under control. Tran had plenty of experience in drug smuggling from Canada. No plausible reason was given why he should be sitting in a car to which the drugs are offloaded unless he was part of the conspiracy. Nguyen gave a vague account of how he knew Tran and why he was there, and Nguyen was impeached. A rational juror could infer that, beyond a reasonable doubt, Tran was the conspiracy's man to shepherd the drugs in the car. This reasonable conclusion chimes with Nguyen's evidence that he and Tran together picked up the marijuana.

I dissent from the majority's reversal of Tran's conviction.