NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 14 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

      Plaintiff-Appellee /
Cross-Appellant,

  v.

PEDRO GRANADOS SALDANA,

      Defendant-Appellant /
Cross-Appellee.

No.   18-50368, 18-50408

D.C. No.
2:17-cr-00122-SJO-6

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted August 12, 2020
Pasadena, California

Before: WARDLAW and CLIFTON, Circuit Judges, and HILLMAN,[**] District
Judge.

     Pedro Granados Saldana appeals his conviction for conspiracy to distribute

at least fifty grams of methamphetamine and his convictions for distribution of at

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Timothy Hillman, United States District Judge for the
District of Massachusetts, sitting by designation.

least five and fifty grams of the same, aiding and abetting.  The Government cross-appeals Saldana's 110-month sentence imposed by the district court.  We have jurisdiction under 18 U.S.C. § 1291 and 18 U.S.C. § 3742.  We affirm in part and vacate and remand in part.

1.     The district court did not err by denying Saldana's motion for judgment of acquittal based on insufficient evidence for his conviction of conspiracy to distribute methamphetamine, a decision we review de novo.  *See United States v. Mincoff*, 574 F.3d 1186, 1191-92 (9th Cir. 2009).  Evidence "is sufficient to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 1192 (internal citation omitted).

Here, it is uncontested that this case involves an established conspiracy to distribute methamphetamine.  "Once a conspiracy is established, the Government can prove a defendant's knowing participation with evidence of the defendant's connection with the conspiracy." *United States v. Esquivel-Ortega*, 484 F.3d 1221, 1228 (9th Cir. 2007) (internal citations omitted).  Even a "slight connection" will suffice.  *Id*.  While "mere presence" around those involved with the conspiracy is insufficient, here the evidence demonstrates that Saldana intentionally participated in the conspiracy.  *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th

Cir. 2001). Indeed, Saldana was present for at least two out of the ten controlled drug sales carried out by the Government's confidential informant ("CI") and on both occasions Saldana directed the CI to another member of the conspiracy who then executed the deals. Further, the cooperating witness ("CW") testified that Saldana was a street seller for Giovanny Ochoa, who ran the drug sales from 538 West 82nd Street ("538") and 601 West 82nd Street ("601"). The CW also testified that Saldana ran the early morning shift and frequently gathered drugs from Ochoa and the CW to deliver to the dealers covering later shifts. A rational trier of fact could therefore plausibly find beyond a reasonable doubt that Saldana had *at least* a "slight connection" to the conspiracy. *Esquivel-Ortega*, 484 F.3d at 1228; *Herrera-Gonzalez*, 263 F.3d at 1095.

2.     Because we conclude there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Saldana aided and abetted the distribution of methamphetamine, "we will not disturb the jury's finding of guilt" on this charge. *See United States v. Yoshida,* 303 F.3d 1145, 1149 (9th Cir. 2002). To support a conviction for aiding and abetting, "it is enough to show that the defendant associated with the criminal venture, participated in it, and sought, by his actions, to make it a success." *United States v. Boykin*, 785 F.3d 1352, 1359 (9th Cir. 2015) (cleaned up). While "mere casual association with conspiring people" is not enough, here the Government presented sufficient evidence

demonstrating that Saldana was an active participant in the methamphetamine distribution enterprise and sought by his actions to make it successful. *United States v. Corona-Verbera*, 509 F.3d 1105, 1119 (9th Cir. 2007) (citation omitted). First, on July 23, 2015, Saldana was present for the negotiations between "Sanchez," another street dealer for Ochoa, and the CI. The CI and Saldana discussed the CI's alleged drug business and how much methamphetamine the CI was hoping to purchase, and Saldana directed the CI to the 601 location to complete the sale, where the CI successfully obtained the narcotics. Second, on September 30, 2015, Saldana was present when the CI arrived at the 538 location where the CI requested two ounces of methamphetamine from Saldana. Not having the CI's requested amount on him, Saldana directed the CI to Avelino Villalba, another member of the conspiracy, who then connected the CI to Ochoa, who finally effectuated the transaction. Considering the evidence in the light most favorable to the Government, a reasonable factfinder could find that Saldana was not only present for the drug transactions but acted with specific intent to make them successful. *Id.*

3. Finally, we "review a jury's . . . special findings for substantial evidence," and there is sufficient evidence for any rational trier of fact to make the jury's special quantity findings here for both Saldana's conspiracy to distribute methamphetamine charge and his two substantive distribution charges. *United*

4

*States v. Navarrete-Aguilar*, 813 F.3d 785, 793 (9th Cir. 2015) (cleaned up). Because we have concluded there is sufficient evidence for Saldana's conviction for aiding and abetting both the July 23, 2015 and the September 30, 2015 sales, which involved 27.49 grams and 115.19 grams of methamphetamine respectively, we affirm the jury's special quantity findings that the July and September transactions involved at least five grams and fifty grams, respectively.

As for the jury's finding that Saldana was responsible for at least fifty grams of methamphetamine for his conspiracy conviction, the Government provided evidence that Saldana was a reliable street seller for the conspiracy, often completing the sale of his daily allocation of two to three grams of methamphetamine every day of the conspiracy, which lasted for at least 40 days. Conservatively, that amounts to at least 80 grams by itself. On top of this, Saldana was regularly entrusted with up to six additional grams of methamphetamine per day to transfer to the sellers working the later shifts. Moreover, the jury found that Saldana facilitated these larger volume methamphetamine transactions on July 23 and September 30, 2015, and there is evidence of other, large transactions facilitated by his co-conspirators within the scope of the conspiracy. Viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact" could find that the conspiracy's distribution of at least fifty grams of methamphetamine was reasonably foreseeable to Saldana and that it was in the

5

scope of his agreement when he joined the conspiracy. *See Navarrete-Aguilar*, 813 F.3d at 793, 795 (cleaned up).

4.      The district court erred by departing from the 120-month mandatory minimum for methamphetamine trafficking under 21 U.S.C. § 841(b)(1)(A)(viii) after crediting Saldana ten months for time already served pursuant to a state court sentence for related conduct.

The Government specifically objected and properly preserved the downward adjustment on appeal, and we therefore review the district court's decision to depart from the mandatory minimum de novo. *United States v. Vilchez*, 967 F.2d 1351, 1353 (9th Cir. 1992), *as amended* (July 9, 1992). Though the Government initially agreed with the district court that the court had the authority to adjust Saldana's mandatory 120-month sentence to account for the state sentence, the Government reversed course before the court pronounced Saldana's sentence and objected to the departure because the state sentence had been fully discharged. *See United States v. Grissom*, 525 F.3d 691, 694 (9th Cir. 2008). The district court acknowledged the Government's objection before proceeding to sentence Saldana to only 110 months.

We conclude that the district court erred by reducing Saldana's sentence by ten months pursuant to U.S.S.G. § 5G1.3(b), which provides that if "a term of imprisonment resulted from another offense that is relevant conduct to that instant

6

offense of conviction," the court shall "adjust the sentence for a period of imprisonment already served on the *undischarged* term of imprisonment" (emphasis added). *See also United States v. Turnipseed*, 159 F.3d 383, 386–87 (9th Cir. 1998). Because Saldana's state court sentence was fully discharged at the time of his federal sentencing, the district court had no discretion to adjust Saldana's sentence below the mandatory minimum of 120 months provided under 21 U.S.C. § 841(b)(1)(A)(viii). *See United States v. Sykes*, 658 F.3d 1140, 1146 (9th Cir. 2011). Saldana's additional constitutional challenges also fail because he has not demonstrated that there is no rational basis for Congress's distinction between discharged and undischarged state sentences. *See United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017).

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**